**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

FREDDIE ROBINSON,                                     :
                                                      :        CIVIL ACTION
                        Plaintiff,                    :
                                                      :
        v.                                            :
                                                      :        NO.  15-1574
CITY OF PHILADELPHIA, et al.,                         :
                                                      :
                        Defendants.                   :

**MEMORANDUM**

BUCKWALTER, S. J.                                                October 13, 2015

        Currently pending before the Court is the Motion to Dismiss by Defendant City of

Philadelphia ("Defendant") pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the

following reasons, the Motion to Dismiss is granted.

## I.      FACTUAL BACKGROUND

        Plaintiff Freddie Robinson ("Plaintiff") is an adult male who lives in Philadelphia,

Pennsylvania.  (Am. Compl. ¶ 1.)  The Philadelphia Police Department is a municipal entity with

a business address at 1515 Arch Street, 15th Floor, Philadelphia, Pennsylvania 19102.  (Id. ¶ 2.)

Defendant Detective Piers[1] is an adult male and a detective with the Philadelphia Police

---

[1] Defendant maintains that "[n]o one named 'Piers' works for the Philadelphia Police Department" and that "the City [of Philadelphia] has not accepted service for this purported individual."  (Def.'s Mem. Supp. Mot. Dismiss 1 (Defendant did not number the pages of its Memorandum of Law, so the Court has supplied the numbering).)

        Plaintiff asserts that he "was not able to obtain the full name and get assurance that he knew the correct last name of Detective Piers, as Detective Piers' violent and unconstitutional conduct put Plaintiff Robinson in fear of future attacks and retaliation on not just Plaintiff Robinson, but his family.  Because of this, Plaintiff has been unable to identify the exact Detective Division where Defendant Detective Piers is located."  (Compl. ¶ 4.)  Plaintiff alleges, upon information and belief, that the Defendant Detective's last name is Piers "or a name quite similar in form and/or pronunciation" and that Detective Piers is an African-American male,

Department with a business address of 750 Race Street, Philadelphia, Pennsylvania 19106.  (Id. ¶ 3.)

On or about March 29, 2013, Plaintiff's nephew Derek Robinson was shot and killed in Philadelphia.  (Id. ¶¶ 9–10.)  On or around April 1, 2013, at approximately 3:00 p.m., Plaintiff, along with his nephew, Leon Robinson, and Leon's wife, went to the Philadelphia Police Department Headquarters to pick up the keys to Derek Robinson's car.  (Id. ¶ 11.)  They went into the building, walked up to the desk, presented identification, and explained that they were there to pick up the car keys.  (Id. ¶ 12.)  The officer at the desk told them they would need to speak with Detective Piers.  (Id. ¶ 13.)  Detective Piers arrived and shouted out, "Who's the uncle?" to which Plaintiff responded, "Me."  (Id. ¶ 14.)  Detective Piers responded, "OK.  I'll see you, y'all can leave," which Plaintiff interpreted as meaning he should stay and that Leon and Leon's wife should leave.  (Id. ¶ 15.)  As Detective Piers was "scuttling" Leon Robinson and his wife out the door, Plaintiff "could not hear Detective Piers' violent language which was, 'You don't want what I'm gonna give you if you come back to this building.'"  (Id. ¶ 16.)

Detective Piers then approached Plaintiff and said repeatedly "Get on the f[***]ing elevator before I throw you in here!"  (Id. ¶ 17.)  After Plaintiff said "I don't think you want to do that," Detective Piers grabbed Plaintiff and threw him in the elevator.  (Id. ¶¶ 20–21.) "Knowing that it would not be wise to try to resist a belligerent, violent and crazy Police Detective, Plaintiff Robinson voluntarily spread his legs and put his arms against the elevator wall."  (Id. ¶ 22.)  Then, "Detective Piers violently and cheaply rocketed his elbow into the side of Plaintiff's head," which was in the "Red Zone," "an area of the body that prohibits such strikes to be used on civilians."  (Id. ¶¶ 23–24.)  Then, in the presence of two other detectives,

---

heavy set, between approximately five feet eleven inches and six feet tall, "and has, or at least had at the time of the incident in question, a large and unique bubble on the back of his head." (Id. ¶ 5.)

Detective Piers threw Plaintiff in an interrogation room with two people who were being

detained.  (Id. ¶ 25.)  "Detective Piers then put on his gloves and violently patted down Plaintiff

Robinson, getting in cheap shots in the process."  (Id. ¶ 26.)  Plaintiff believes that the pat down

was used as a means to hurt him, because none of his possessions were taken.  (Id. ¶ 28.)

      Plaintiff, who was not charged with any crime, was detained in the interrogation room for

approximately sixteen hours.  (Id. ¶ 27.)  He was not allowed to go to the bathroom despite his

pleas to go, and was not provided any food or drink.  (Id.)  Plaintiff called his daughter on his

cell phone to try and get help.  (Id. ¶ 29.)  The phone call "must have tipped off Detective Piers

that the outside world may be trying to thwart his unconstitutional detainment of Plaintiff

Robinson, thus, Detective Piers came in the interrogation room and took Plaintiff Robinson's

phone."  (Id. ¶ 30.)  By using a threatening tone, Detective Piers obtained the passcode for

Plaintiff's phone, "from which, Detective Piers then invaded Plaintiff Robinson's privacy rights

by searching his phone with no legitimate purpose."  (Id. ¶ 31.)

      At 7:30 a.m. the next day, Plaintiff was released and he signed papers to get his phone

back.  (Id. ¶ 32.)  An officer informed him that he had been detained because he hit Detective

Piers, but no charges were ever brought against Plaintiff.  (Id. ¶ 33.)  When Plaintiff was

released, Detective Piers was gone because "his shift ended earlier and he had no regard or

compassion to release the grieving uncle, Plaintiff Robinson, who was unconstitutionally beaten,

seized and imprisoned, among other things."  (Id. ¶ 34.)  Plaintiff asserts that such treatment

"wasn't even an afterthought for Detective Piers."  (Id. ¶ 35.)

      As a result of Detective Piers's assault, Plaintiff suffered a closed head injury, back pain,

neck pain, and headaches, which required treatment at a hospital about a week after the incident

because the pain did not subside.  (Id. ¶ 36.)  Plaintiff continues to suffer mental and physical

effects from the incident.  (Id. ¶ 37.)

 In early 2015, the Collaborative Reform Initiative ("CRI") released a document entitled

"An Assessment of Deadly Force in the Philadelphia Police Department," "which was awarded

by the Department of Justice in 2013 and also extensively reviewed and made recommendations

to the Philadelphia Police Department ("PPD") and the use of force outside shootings."  (Id. ¶

38.)  The assessors considered hundreds of departmental policies, manuals, training lesson plans,

and strategic plans, and conducted site visits, data collection reviews, and interviews.  (Id. ¶ 39.)

Plaintiff asserts that "[t]he evidence used for the Collaborative Reform Initiative ("CRI") was

well in existence and known at the time of Mr. Robinson's violations of constitutional rights (and

included all data in the PPD Use of Force database from 2007-2013)."  (Id. ¶ 40.)  The CRI made

forty-eight findings and ninety-one recommendations and "uncovered policy, training, and

operational deficiencies[.]"  (Id. ¶ 41.)  The CRI made numerous findings regarding the general

use of force policy, the need for more frequent training, revisions to the use of force policies, and

the inclusion of a "duty to report" aspect in the "duty to intervene" clause that requires officers to

stop another officer from using force when it is no longer required.  (Id. ¶¶ 42–45, 47.)  The CRI

also recommended that the "duty to intervene" clause should be revised to account for officers

who witness the inappropriate initiation of force, rather than just those who witness a failure to

stop using force when it is no longer needed.  (Id. ¶¶ 45–46.)  In addition, the CRI made

recommendations regarding academy instruction, additional training, and additional programs.

(Id. ¶¶ 49–56.)

 Plaintiff initiated the present litigation by filing a Complaint on March 27, 2015, which

Defendants moved to dismiss on June 17, 2015.  Plaintiff filed his Amended Complaint on June

29, 2015.  Defendants moved to dismiss the Amended Complaint on July 8, 2015.  Plaintiff filed

a Response in Opposition to the Motion to Dismiss on July 22, 2015.  The Motion to Dismiss is

now ripe for judicial consideration.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has

not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v.

United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corp. v. Twombly, 550 U.S.

544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Following

these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently

defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Id. at 678.  Thus, although "Rule 8 marks a notable and

generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not

unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at

678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible

claim for relief survives a motion to dismiss."  Id. at 679. "Determining whether a complaint

states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static.  Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  Phillips, 515 F.3d at 233.  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

Defendant City of Philadelphia moves to dismiss Plaintiff's Amended Complaint in its entirety for failure to state a claim under Rule 12(b)(6).  Having considered the Amended Complaint and the parties' briefs, the Court finds that Plaintiff's claims against the City of Philadelphia fail as a matter of law and grants Defendant's Motion to Dismiss.

### A.  Count One: Violation of Civil Rights

In Count One of the Amended Complaint, Plaintiff incorporates numerous and varied allegations against both Defendant Piers and Defendant City of Philadelphia.  Plaintiff did not divide these allegations into separate claims, but it appears to the Court that logically—and

legally—they fall into four broad categories as follows: (1) claims regarding Plaintiff's treatment at the Philadelphia Police Department Headquarters, for which Plaintiff believes both Defendant Piers and the City of Philadelphia are liable;[2] (2) a municipal liability claim against the City of Philadelphia based on a pattern, practice, or custom which led to the deprivation of Plaintiff's constitutional rights; (3) a municipal liability claim against the City of Philadelphia based on deliberate indifference and/or a failure to train, supervise, investigate, and discipline; and (4) a municipal liability claim against the City of Philadelphia based on the existence of a custom on excessive force which led to the deprivation of Plaintiff's constitutional rights.  Plaintiff asserts that all allegations in Count One are against both Defendants, but it appears to the Court that only the first category of claims could be construed as against both Defendants, while the remaining three categories are more appropriately stated against a municipal defendant only—in this case, the City of Philadelphia.  The Court will therefore discuss the allegations in Count One using a framework that comports with those categories of claims.[3]

### 1. <u>Allegations Against All Defendants</u>

Plaintiff alleges that Defendants' conduct "was intended to harm Plaintiff, Freddie Robinson, and/or was recklessly and deliberately indifferent to the safety, bodily integrity, well-being, privacy and liberty of Plaintiff, and was committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to members of the public and to Plaintiff, and was so egregious as to shock the conscience."  (Am. Compl. ¶ 58.)  Plaintiff further alleges

---

[2] The Court notes that, as the instant Motion to Dismiss is only on behalf of Defendant City of Philadelphia, Count One is being discussed only with respect to that defendant.  The Court makes no ruling as to the claims against Defendant Piers.

[3] The claims in Count One are being dismissed without prejudice.  Should Plaintiff choose to file a Second Amended Complaint including the dismissed claims, the Court urges Plaintiff to consider a reformulation of Count One that would make clear which claims are against which Defendant and also whether and how the factual allegations support Plaintiff's various theories of municipal liability.

that Defendants' conduct violated Plaintiff's constitutional rights to (1) be free from unreasonable searches and seizures; (2) be free from arrest without probable cause; (3) be free from stops absent a reasonable suspicion that he has committed a crime; (4) bodily integrity; (5) care in custody; (6) be free from excessive force; (7) be free from cruel and unusual punishment; (8) privacy; and (9) substantive and procedural due process.  (Id. ¶ 59.)  In addition, Plaintiff alleges that "Defendants' conduct of engaging in a cover up of their illegal detainment and illegal use of force [. . .] violated Plaintiff's constitutional right of access to courts" pursuant to "the privileges and immunities clause of Article 4 and the Fourteenth Amendment of the Constitution, the right to petition for redress of grievances found in the First Amendment, and the Due Process Clause."  (Id. ¶ 60.)  Plaintiff also asserts that he suffered intentionally and negligently inflicted emotional distress as a result of Defendants' conduct.[4]  (Id. ¶ 68.)

Specifically, Plaintiff alleges that his rights were violated because Defendants:

a)  physically assaulted, mercilessly beat and detained Plaintiff when it was clear to any reasonable detective that there was no probable cause or reasonable suspicion for detainment and seizure;

b)  assaulted Plaintiff and took him into custody when there was absolutely no trustworthy or fair probability that he had committed a crime;

c)  conspired in callous disregard for the safety of the Plaintiff to cover up the assault by fabricating a story that Plaintiff assaulted Detective Piers and having no documentation of Mr. Robinson's presence and/or detainment, and thereby deprived Plaintiff of his constitutional rights, including access to the courts;

---

[4] As discussed below, Plaintiff may not assert municipal liability claims against the City of Philadelphia on a respondeat superior basis, in this instance for Defendant Piers's allegedly intentional and negligent infliction of emotional distress.  In addition, for the reasons discussed below in connection with Count Two of the Amended Complaint, Plaintiff may not assert a negligent infliction of emotional distress claim against the City of Philadelphia because such a claim is not within one of the eight enumerated exceptions in Pennsylvania's Political Subdivision Tort Claims Act.  Accordingly, to the extent Plaintiff attempts to state claims of intentional and negligent infliction of emotional distress against Defendant City of Philadelphia in Count One, such claims are dismissed.

    d)  violated Plaintiffs [sic] substantive due process and other constitutional rights;

    e)  intentionally veil[ed] and fail[ed] to report the incident altogether completely and/or in its entirety;

    f)  intentionally and recklessly expos[ed] Plaintiff to a state created danger;

    g)  intentionally and recklessly fail[ed] to memorialize and/or to provide truthful and accurate information on incident reports in accordance with the State laws and administrative regulations;

    h)  stopp[ed] and/or assault[ed] Plaintiff without a reasonable suspicion that he ha[d] or was about to commit a crime;

    i)  exhibit[ed] a willful disregard for the safety of Plaintiff by use of excessive force;

    j)  us[ed] potentially deadly force of [sic] Plaintiff in the nature of a blow to his head;

    k)  participated in the violent beating of an innocent bystander;

    l)  conspired to conceal the happening of the assault from Plaintiff and from the proper authorities;

    m)  used excessive and unnecessary force to apprehend Plaintiff;

    n)  failed to complete and/or provide truthful and accurate information on use of force forms or an arrest report;

    o)  failed to notify Internal Affairs of the assault and unlawful detention;

    p)  destroyed and/or failed to preserve evidence; and

    q)  lied about how Plaintiff sustained his injuries.

(Id. ¶ 61.)  Plaintiff asserts that "at no time did [he] commit any offense against the laws of the Commonwealth of Pennsylvania for which an arrest may lawfully be made," and that he did not "strike, attempt or intend to strike any police officers," nor did he "harass, threaten, resist in any way, commit any illegal act or engage in any conduct which could justify the actions by Defendants."  (Id. ¶ 69.)

      "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988) (internal citations omitted); see also Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) ("To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right

protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law.") (internal citations omitted).

The United States Supreme Court has "recognized that a municipality may not be held liable under § 1983 solely because it employs a tortfeasor."  Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403 (1997).  Municipalities or other local government entities are not liable under § 1983 through respondeat superior.  Id.  ("We have consistently refused to hold municipalities liable under a theory of respondeat superior.").  Rather, the Court "required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury."  Id. (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689 (1978); Pembaur v. Cincinnati, 475 U.S. 469, 480–81 (1986); City of Canton v. Harris, 489 U.S. 378, 389 (1989)).  "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  Brown, 520 U.S. at 404 (emphasis in original).

The first category of Plaintiff's allegations in Count One appears to be based entirely on the conduct of Defendant Piers, as well as that of unnamed police officers who were on duty at the time of the events described in Plaintiff's Amended Complaint.  As indicated above, Defendant City of Philadelphia cannot be held liable for Philadelphia Police Department employees' conduct on a respondeat superior theory of liability.  Moreover, Plaintiff has not identified a policy or custom in connection with the first category of allegations described in

Paragraphs Fifty-Nine, Sixty, Sixty-one, or Sixty-Eight of the Amended Complaint.  Nor has

Plaintiff alleged facts which could show that anyone other than Defendant Piers, and possibly

other officers present at the time, was the moving force behind his injuries, or which establish a

causal link between the actions of Defendant Piers and the Philadelphia Police Department

constituting deliberate conduct on the part of the municipality.  To permit that claim to go

forward as pled would allow Plaintiff to attempt to impermissibly assign liability to the City of

Philadelphia based solely on its employment of Defendant Piers and other officers discussed in

the above-quoted paragraphs from the Amended Complaint.  For those reasons, the claims in

Paragraphs Fifty-Nine, Sixty, Sixty-One, and Sixty-Eight of Count One are dismissed as against

Defendant City of Philadelphia.[5]

---

[5] Defendant City of Philadelphia argues that several of Plaintiff's federal law claims in
Paragraphs Fifty-Nine and Sixty fail for additional reasons.  Specifically, Defendant City of
Philadelphia argues that Plaintiff did not plead facts to support his claims that he was denied his
right to:  (1) procedural or substantive due process; (2) petition for redress of grievances; (3)
privacy; and (4) access to courts provided by the privileges and immunities clauses.  (Def.'s
Mem. Supp. Mot. Dismiss 7 (citing Am. Compl. ¶¶ 59–60).)  Defendant also argues that
Plaintiff's "bodily integrity" claim should be dismissed, as "Defendant is aware of no case law
establishing that Plaintiff has some sort of right to 'bodily integrity' that is independent of his
Fourth Amendment right to be free from excessive force."  (Id. at 8 (citing Am. Compl. ¶ 59).)
Defendant next argues that Plaintiff cannot bring an Eighth Amendment claim because he was
not incarcerated as a convicted felon.  (Id. (citing Worthington v. Cnty. of Northampton, No. 13-
6292, 2015 WL 1312644, at *7 n.10 (E.D. Pa. Mar. 24, 2015)).)  Finally, Defendant argues that,
"to the extent that Plaintiff is alleging a denial of medical care claim by stating that the
Defendants violated his 'rights to care in custody' . . . the complaint pleads no facts to support
such a claim."  (Id. (citing Am. Compl. ¶ 59).)
    Plaintiff's only response appears in a footnote to the argument section regarding his
separate failure to train claim, and states that "Plaintiff's Medical Care claim is proper because
[he] was injured, required hospitalization, and had to eat and use the restroom—all of which was
denied while he was detained."  (Pl.'s Resp. Opp'n Mot. Dismiss 11 n.8.)
    For the reasons described above, the allegations against Defendant City of Philadelphia in
Paragraphs Fifty-Nine and Sixty of the Amended Complaint are subject to dismissal because
they fail to state a municipal liability claim in accordance with United States Supreme Court and
Third Circuit precedent.  Accordingly, the Court does not address Defendant's arguments
regarding those allegations.  If, however, Plaintiff chooses to file a second amended complaint
and re-plead the claims against Defendant City of Philadelphia contained in Paragraphs Fifty-

### 2. <u>Municipal Liability Claims Against the City of Philadelphia</u>

As stated above, Plaintiff appears to allege three categories of municipal liability claims against Defendant City of Philadelphia: (1) a pattern, practice, and custom regarding various aspects of policing, which led to the deprivation of Plaintiff's constitutional rights; (2) deliberate indifference/failure to train, supervise, investigate, and discipline, which led to the deprivation of Plaintiff's constitutional rights; and (3) the existence of a custom of excessive force which led to the deprivation of Plaintiff's constitutional rights.

Defendant City of Philadelphia argues that Plaintiff's claims against the City should be dismissed because he has sued "without alleging facts which plausibly suggest that a municipal policy or custom caused him to suffer an injury" and because he "fails to allege facts that link a municipal policymaker to a particular policy or custom." (Def.'s Mem. Supp. Mot. Dismiss 1.) Defendant argues further that, "while the amended complaint includes three paragraphs of conclusory allegations regarding Commissioner Ramsey," "Plaintiff completely fails to include any factual allegations in his amended complaint regarding the conduct of Commissioner Ramsey or any other municipal policymaker." (<u>Id.</u> at 1–2.) Plaintiff asserts that he has "demonstrated" <u>Monell</u> claims, "because Defendant's policies, customs, and failure to train caused [his] injuries" and because "knowledge by Commissioner Ramsey was sufficiently pled." (Pl.'s Mem. Supp. Mot. Dismiss 5.)[6] The Court will separately address each of the three categories of municipal liability claims.

---

Nine and Sixty, he may wish to take Defendant's arguments into account when deciding whether to include any or all of those claims.

[6] Plaintiff did not number the pages of his Response in Opposition, so the Court has supplied the numbering.

### i.  **Allegations of a Pattern, Practice, and Custom**

Plaintiff alleges that the Philadelphia Police Department "permitted, encouraged, tolerated, ratified and was deliberately indifferent to a pattern, practice and custom of:"

    a) Unjustified, unreasonable and illegal use of process by police officer(s);

    b) Abuse of police powers, including excessive use of force, retaliating against individuals for exercising their constitutional rights; harassment and improper searches;

    c) Misrepresenting facts in order to establish probable cause where none would[]otherwise exist;

    d) Arresting and detaining citizens without probable cause;

    e) Psychologically or emotionally unfit persons serving as police officers; and

    f) Failure of police officers to prevent, deter, report or take action against the unlawful conduct of police officers under such circumstances as presented herein.

(Id. ¶ 70.)

Defendant City of Philadelphia argues that these claims must be dismissed "because Plaintiff's Monell allegations are either conclusory or fail to plausibly suggest that a municipal policy or custom somehow caused Plaintiff's injury."  (Def.'s Mem. Supp. Mot. Dismiss 2–3.) In addition, Defendant asserts that the brief and conclusory allegations in the Amended Complaint regarding Commissioner Ramsey do not include factual allegations regarding the conduct of a specific municipal policymaker and do not link any conduct by Commissioner Ramsey to a policy, which requires dismissal of Plaintiff's claims.  (Def.'s Mem. Supp. Mot. Dismiss 5–6.)  Plaintiff does not actually address the allegations in Paragraph Seventy in his Response in Opposition, focusing instead on his separate excessive force and failure to train claims.

"[Third Circuit] jurisprudence is clear that when a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression

implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009) (internal citations and quotations omitted). "A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) superseded in part by statute, Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1072 (1991) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Id. (quoting Monell, 436 U.S. at 690) (additional citations omitted). "Custom requires proof of knowledge and acquiescence by the decisionmaker." McTernan, 564 F.3d at 658 (citing Watson v. Abington Twp., 478 F.3d 144, 154 (3d Cir. 2007); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

Plaintiff describes the constitutional violations set forth in Paragraph Seventy as abuse of police power, including the use of excessive force, failure to establish probable cause based on fact, illegal arrests, employment of psychologically or emotionally unfit officers, and a department-wide failure by officers who did not prevent, deter, or report incidents such as the one Plaintiff alleges. Plaintiff does not allege that there is an official policy authorizing the types of behavior described in Paragraph Seventy of the Amended Complaint. The alleged "pattern, practice, or custom" that Plaintiff identifies in the Amended Complaint and in his Response in Opposition is concerned with the use of force and officers' responsibilities relating to the use of

force and intervening to stop the use of excessive force by others.[7]  Plaintiff does not, however, identify any practices related to his allegations that are permanent or so well-settled so as to constitute law such that Defendant Piers's actions could be considered to have been pursuant to a "custom."

In addition, in Paragraph Seventy, Plaintiff does not adequately plead Commissioner Ramsey's knowledge or acquiescence regarding a custom,[8] nor has Plaintiff identified any actual conduct by decisionmakers in the Philadelphia Police Department that could be considered "permitting, encouraging, or ratifying," a policy, pattern, or custom.  The absence of factual allegations regarding the official adoption of a policy or knowledge and acquiescence of a custom by a decisionmaker in the Philadelphia Police Department also requires dismissal of the municipal liability claim set forth in Paragraph Seventy of the Amended Complaint.

Equally problematic for the municipal liability claim asserted in Paragraph Seventy is Plaintiff's failure to allege the required elements of a deliberate indifference claim.  Plaintiff states only that the Philadelphia Police Department "was deliberately indifferent to a pattern, practice and custom" without providing any further factual details.[9]  (See Am. Compl. ¶ 70.)  Such a conclusory allegation is wholly insufficient to state a claim of deliberate indifference.

---

[7] Plaintiff briefly mentions excessive force in Paragraph Seventy, but as it is duplicative of Plaintiff's other allegations regarding excessive force, the Court does not address it in this section.

[8] As discussed below, Plaintiff included allegations regarding Commissioner Ramsey in connection with his claim that there was a custom regarding the use of excessive force that led to Plaintiff's injuries.  Plaintiff did not, however, allege knowledge by Commissioner Ramsey in connection with the violations described in Paragraph Seventy of the Amended Complaint.

[9] The requirements of a deliberate indifference claim are discussed more fully below, but at a minimum, such a claim requires a non-conclusory allegation that "'a municipal actor disregarded a known or obvious consequence of his action.'"  Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1360 (2011) (quoting Brown, 520 U.S. at 410).  Plaintiff does not include such allegations in the portion of the Amended Complaint at issue here.

For all of the above reasons, the allegations in Paragraph Seventy of the Amended

Complaint are insufficient to state a <u>Monell</u> claim.  Thus, Plaintiff's municipal liability claim

against the City of Philadelphia based on a "pattern, practice and custom" must be dismissed.

### ii. <u>Deliberate Indifference to Training, Supervision, Investigation, or Discipline</u>

Plaintiff alleges that the Philadelphia Police Department was "deliberately indifferent to

the need to:"

> a) Test its officers for emotional and psychological fitness to serve as police officers;
> b) Monitor officers whom it knew or should have known were suffering from emotional and/or psychological problems that impair their ability to function as police officers;
> c) Train its police officers in the appropriate exercise of police powers;
> d) Train its police officers in the appropriate use of force;
> e) Facilitated, encouraged, tolerated, ratified, and/or was deliberately indifferent to officers using their status as police officers to have persons falsely arrested, retaliated against, assaulted and/or to achieve ends not reasonably related to their police duties; and
> f) [] properly train, supervise, and discipline officers with regard to such police practices.

(<u>Id.</u> ¶ 71.)

Plaintiff further alleges that the Philadelphia Police Department "was deliberately

indifferent to the need for more or different training, supervision, investigation or discipline in

the areas of:"

> a) Use of information in obtaining probable cause;
> b) Exercise of police powers;
> c) Police officers with emotional or psychological problems;
> d) Police officers [sic] use of their status as police officers to have persons falsely arrested, assaulted, and unlawfully searched or to achieve ends not reasonably related to their police duties; and
> e) False arrest, the planting and the destruction and fabrication of evidence.

16

(Id. ¶ 72.)

Plaintiff also alleges that the Philadelphia Police Department "failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other police officers, thereby causing and encouraging police officers, including the Defendants [sic] police officers in this case, to violate the rights of citizens such as Plaintiff."  (Id. ¶ 73.)  Plaintiff further alleges that the circumstances he describes in his Amended Complaint "have caused police officers, including Defendant Piers and other officers present in this case, to believe that they can violate the rights of citizens, with impunity, including the use of fraud and falsehood, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens."  (Id. ¶ 74.)  Finally, Plaintiff reasserts a previous allegation that all Defendants deprived Plaintiff of his rights "to be secure in one's person and property, to be free from unlawful searches, from false arrest, retaliation and to due process of law."  (Id. ¶ 75.)

As stated above, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  Brown, 520 U.S. at 404 (emphasis in original).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."  Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1359 (2011).  "To satisfy the statute, a municipality's failure to train its employees in a

17

relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Id. (quoting Canton, 489 U.S. 378, 388, (1989). "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.'" Id. at 1359–60 (quoting Canton, 489 U.S. at 389).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" Id. at 1360 (quoting Brown, 520 U.S. at 410). "[D]eliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction." S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 263 (3d Cir. 2013) (internal citations and quotations omitted). It also requires a showing of "actual knowledge; allegations that one would have or 'should have known' will not satisfy the knowledge prong of deliberate indifference." Id. at 266 (citing Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (holding that, under the deliberate indifference standard, "[i]t is not sufficient that the official should have known of the risk")). "To satisfy the deliberate indifference standard, [plaintiffs] must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated . . . , and (2) failure to act despite that knowledge." Id. at 265 (internal citation omitted). "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick, 131 S. Ct. at 1360 (citing Brown, 520 U.S. at 407).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. (citing Brown, 520 U.S. at 409). "Policymakers 'continued adherence to an approach that they know or

should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability.'" Id. (quoting Brown, 520 U.S. at 407). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id.

Defendant City of Philadelphia argues that Plaintiff's failure to train claim must be dismissed because he "does not identify prior instances of police misconduct caused by allegedly inadequate training." (Def.'s Mem. Supp. Mot. Dismiss 6.) Plaintiff responds by arguing that his allegations are "supported by the gross misconduct of Detective Piers and his contemporaries' failure to intervene" and that "the pleadings show several ways in which Defendant's failure to train brought about Plaintiff's constitutional violations." (Pl.'s Mem. Supp. Mot. Dismiss 11 (citing Am. Compl. ¶¶ 43, 49–55).) In a footnote, Plaintiff also cites the quoted passages from the CRI report which appear in the Amended Complaint, and concludes by stating that "[t]hus, the complaint is not stating a single mere assertion, but plausibly pleads a failure to train claim." (See id. at 11 n.6 (citing Am. Compl. ¶¶ 43, 49–55).)

The conclusory allegations in Paragraphs Seventy-One and Seventy-Two of the Amended Complaint neither identify how officer training in those areas was inadequate, nor demonstrate a causal link between any alleged failures and the actual deprivation of rights that Plaintiff describes. Moreover, Plaintiff alleges no facts to show that (1) city officials were aware of a failure to train officers which was resulting in the violation of constitutional rights of citizens who voluntarily came to police headquarters, in a manner similar to that which Plaintiff described; (2) despite any such awareness, decisionmakers in the Philadelphia Police Department nonetheless chose to retain inadequate training programs; or (3) there was a pattern of incidents

involving citizens voluntarily entering police headquarters and experiencing treatment like that which Plaintiff describes.

Furthermore, Plaintiff incorrectly relies on the CRI report, the release of which post-dates the events described in the Amended Complaint by approximately two years, in order to show actual knowledge or actual or constructive notice of training inadequacies on the part of the Philadelphia Police Department.  In addition, Plaintiff is mistaken that the pleadings—specifically, his quotations from the CRI report—show several ways in which the failure to train brought about the alleged violations of Plaintiff's constitutional rights.  The CRI identified areas in which the third-party reviewers believed additional guidance on deadly force and use of force was needed, and made recommendations for policy language on the basis of that belief.  The portions of the CRI report that Plaintiff cites, however, do not "show" the ways in which any absence of such guidance caused the violation of Plaintiff's rights under the specific circumstances alleged.  Ultimately, Plaintiff has not set forth sufficient facts to support his claims that the Philadelphia Police Department failed to train its officers in this area and that Philadelphia Police Department officials were deliberately indifferent to inadequacies in training, supervision, investigation, or discipline.  Accordingly, Plaintiff's failure to train claim against Defendant City of Philadelphia must be dismissed.

### iii.  Allegations of a Municipal Custom of Unnecessary Force

Plaintiff next claims that the Philadelphia Police Department "has a long-standing custom of employing unnecessary force upon the constituents it serves and of failing to train and/or discipline officers as to professionalism and the proportionate use of force."  (Am. Compl. ¶ 77.) Plaintiff asserts that the custom "has been approved by Defendant, Police Department's, final decision-makers, including, Commissioner Charles Ramsey" and that the "policy deficiencies

20

implemented by the Defendant, Police Department's, final decision-makers, including, Commissioner Ramsey, constitutes a proclamation of policy by Commissioner Ramsey and other final decision-makers, acting with deliberate indifference to the rights of Mr. Robinson." (Id. ¶¶ 78–79.)  According to Plaintiff, there is a "direct causal link" "between the aforementioned policy(s), custom(s) and failure to train by Defendant, Police Department, and Mr. Robinson's constitutional violations" and that the "aforementioned policymakers/decision-makers, including Commissioner Ramsey, were aware of prior police misconduct similar to that which was inflicted on Mr. Robinson, but failed to take proper precautions, which in turn, led to Mr. Robinson's injury." (Id. ¶¶ 80–81.)  Plaintiff further asserts that what happened to him "is a common situation that police officers face, and are all situations in which violations of citizens' constitutional rights are likely to occur" and that, prior to the events described in the Amended Complaint, many citizens had complained to the City of Philadelphia and the Philadelphia Police Department "about the conduct of police officers in these situations." (Id. ¶¶ 82–83.)  According to Plaintiff, the Philadelphia Police Department's "decision to ignore complaints about their practices[] amounts to deliberate indifference." (Id. ¶ 84.)  Plaintiff also asserts that, among other injuries, he suffered intentionally and negligently inflicted emotional distress.[10] (Id. ¶ 93.)

Defendant asserts that Plaintiff's brief and conclusory allegations regarding Commissioner Ramsey do not include factual allegations about his conduct and do not link him to a particular policy, which requires dismissal of Plaintiff's claim. (Def.'s Mem. Supp. Mot.

---

[10] As discussed above, Plaintiff may not assert municipal liability claims against the City of Philadelphia on a respondeat superior basis, in this instance for Defendant Piers's allegedly intentional and negligent infliction of emotional distress.  In addition, for the reasons discussed below, Plaintiff may not assert a negligent infliction of emotional distress claim against the City of Philadelphia because such a claim is not within one of the eight enumerated exceptions in Pennsylvania's Political Subdivision Tort Claims Act.  Accordingly, to the extent Plaintiff attempts to state claims of intentional and negligent infliction of emotional distress against Defendant City of Philadelphia as part of a municipal liability claim based on custom, such claims are dismissed.

Dismiss 5–6.)  Plaintiff responds by arguing that "[t]he pleadings plausibly demonstrate that Commissioner Ramsey was aware that the Philadelphia Police Department's ("PPD") policy on excessive force created the likelihood that officers like Detective Piers would violate citizens' constitutional rights in the same manner that [Plaintiff's] rights were violated."  (Pl.'s Resp. Opp'n Mot. Dismiss 5.)

As previously explained, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its <u>deliberate</u> conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." <u>Brown</u>, 520 U.S. at 404 (emphasis in original).  "[A] municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." <u>McTernan</u>, 564 F.3d at 657 (internal citations and quotations omitted).  "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." <u>Andrews</u>, 895 F.2d at 1480 (quoting <u>Monell</u>, 436 U.S. at 690) (additional citations omitted).  "Custom requires proof of knowledge and acquiescence by the decisionmaker." <u>McTernan</u>, 564 F.3d at 658 (citing <u>Watson v. Abington Twp.</u>, 478 F.3d 144, 154 (3d Cir. 2007); <u>Beck</u>, 89 F.3d at 971.

Relying on recommendations for policy additions that were made in the CRI report, Plaintiff argues that the "policy deficiencies" which were "implemented" by Commissioner Ramsey "constitute[] a proclamation of policy" that led police officers like Detective Piers to "believe that they can violate the rights of citizens, with impunity."  (Pl.'s Resp. Opp'n Mot.

22

Dismiss 7 (citing Am. Compl. ¶¶ 57, 74, 75).)  The recommendations in the CRI report do not,

however, equate to a finding that Commissioner Ramsey proclaimed a policy that would lead

officers to believe that they could behave in the manner in which Detective Piers is alleged to

have done.  As Plaintiff himself points out, PPD Directive 22 states that "[o]nly the minimal

amount of force necessary to protect life or effect arrest should be used by an officer.  Excessive

force will not be tolerated . . . ."  (Pl.'s Resp. Opp'n Mot. Dismiss 6.)  Directive 22's plain

language undermines Plaintiff's argument that Commissioner Ramsey was "aware" that the

excessive force policy "created the likelihood that officers like Detective Piers would violate

citizens' constitutional rights in the same manner that [Plaintiff's] rights were violated."  (See

Pl.'s Resp. Opp'n Mot. Dismiss 5.)  A policy which states that only the minimal amount of force

needed should be used, and that excessive force will not be tolerated, does not create a

"likelihood" that a police officer would physically assault and detain a citizen inside of police

headquarters.  Plaintiff's allegations simply do not show that a policy which states that excessive

force will not be tolerated was the "moving force" behind his alleged constitutional injuries.

　　　　Plaintiff also asserts that Commissioner Ramsey "approved" a "long-standing custom" of

using excessive force, but does not include any factual support for his conclusory allegation.

Nor does Plaintiff provide any factual support for his allegation that Commissioner Ramsey and

other decision-makers were aware of prior incidents similar to what allegedly happened to

Plaintiff, or that many citizens had complained about the "common situation" in which Plaintiff

found himself.  (See Pl.'s Resp. Opp'n Mot. Dismiss 8.)  In the Amended Complaint, Plaintiff

asserts that there is a direct causal link between PPD policy and custom and the violations of

Plaintiff's constitutional rights, but in no way elaborates on that allegation.  Plaintiff argues that

"[t]he Complaint alleges as clear as day 'policymakers/decision-makers, including

Commissioner Ramsey, were aware of prior police misconduct similar to that which was inflicted on Mr. Robinson, but failed to take proper precautions, which in turn, led to Mr. Robinson's injury."  (Id. (quoting Am. Compl. ¶ 81).)  Plaintiff, however, does not support his allegation with facts sufficient to survive a motion to dismiss.  Plaintiff next argues that "the pleadings directly state actual knowledge" and that "the inference of actual knowledge is also satisfied" "because Commissioner Ramsey was the head policy maker and was aware of prior complaints made."  (Id. at 10.)  Merely including the words "actual knowledge" in a complaint in the absence of any factual support is not enough to state a legally sufficient Monell claim. Similarly, the fact that Commissioner Ramsey is the top official in the Philadelphia Police Department does not equate to factual support for Plaintiff's assertion that prior complaints about situations similar to that described by Plaintiff had been made and that Commissioner Ramsey was aware of them.

Plaintiff also argues that the Philadelphia Police Department's "decision to ignore complaints about their practices, amounts to deliberate indifference which caused [Plaintiff's] injuries."  (Id.)  As discussed above, Plaintiff's Amended Complaint does not include any factual examples to support his allegations that there were complaints about situations similar to Plaintiff's, that they were ignored, or that "city policymakers are on actual or constructive notice that a particular omission in their training program cause[d] city employees to violate citizens' constitutional rights."  Connick, 131 S. Ct. at 1360 (citing Brown, 520 U.S. at 407).  Plaintiff's failure to include such factual allegations renders the deliberate indifference aspect of this claim insufficient and subject to dismissal.

24

In sum, Plaintiff's conclusory assertions are insufficient to state a municipal liability claim against Defendant City of Philadelphia on the basis of a "custom" of unnecessary force. Accordingly, that claim must be dismissed.

### B.  Count Two: Negligence

In Count Two, Plaintiff asserts a claim of negligence against the Philadelphia Police Department, alleging that Defendant Piers "engaged in willful misconduct in that he desired to bring about the result that followed or at least were [sic] aware that it was substantially certain to follow, so that such desire can be implied," and that such willful misconduct "serves to waive any immunity or limitation on damages that the municipal defendants would have otherwise enjoyed" pursuant to the Political Subdivision Tort Claims Act.  (Am. Compl. ¶¶ 95–96.) Plaintiff claims that examples of the Philadelphia Police Department's negligence, carelessness, and recklessness include the following:

a)  failing to properly train its detectives on the appropriate use of force;
b)  failure to properly train its detectives on the need to establish probable cause prior to arrest and reasonable suspicion for detainment;
c)  failure to properly supervise the detective that assaulted and detained Plaintiff;
d)  failure to draft, implement and enforce policies that would serve to eliminate the use of excessive force, unlawful seizures and false imprisonment;
e)  failure to draft, implement and enforce policies that would serve to prevent the falsification of reports by its detectives;
f)  failure to comply with police standards;
g)  failure to adequately train its workforce; and
h)  is otherwise negligent in law and in fact.

(Id. ¶ 97.)  Plaintiff also asserts that, among other negative effects, he has suffered "intentionally and negligently inflicted emotional distress" as a result of Defendants' actions and/or failure to act.  (Id. ¶ 104.)

25

Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8541, et seq., states that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. Cons. Stat. § 8541.  "[T]he City of Philadelphia is a 'local agency' and therefore covered by the Act's immunity provisions."  Panas v. City of Phila., 871 F. Supp. 2d 370, 376 (E.D. Pa. 2012) (citations omitted).  "Section 8542 provides that an injured party may recover in tort from a local governmental agency if: (1) damages would be otherwise recoverable under common law or statute; (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties; and (3) the negligent act of the local agency falls within one of eight enumerated categories."  Wells v. Harrisburg Area Sch. Dist., 884 A.2d 946, 948 (Pa. Commw. Ct. 2005) (citing Cureton v. Phila. Sch. Dist., 798 A.2d 279, 283 (Pa. Commw. Ct. 2002) (citing 42 Pa. Cons. Stat. § 8542), appeal denied, 820 A.2d 704 (Pa. 2003)).  The eight enumerated categories are: 1) operation of motor vehicles; 2) care, custody or control of personal property; 3) care, custody or control of real property; 4) trees, traffic controls and street lighting; 5) utility service facilities; 6) streets; 7) sidewalks; and 8) care, custody or control of animals.  See 42 Pa. Cons. Stat. § 8542.  "Since 'negligent acts' do 'not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct,' . . . the Tort Claims Act shields local government entities from liability for the intentional torts of their employees."  Panas, 871 F. Supp. 2d at 375–76 (citing Thomas v. Cianfrani, No. 01–3096, 2009 WL 1704471, at *4–5 (E.D. Pa. June 17, 2009); Heckensweiler v. McLaughlin, 517 F. Supp. 2d 707, 719 (E.D. Pa. 2007); Holmes v. City of Phila., No. 05–2909, 2005 WL 1875524, at *3 (E.D. Pa. Aug. 4, 2005)).

26

According to Defendant, Plaintiff's claim must be dismissed because the exceptions "do not even arguably apply" to Plaintiff's negligence claim, "which is based on 'Detective Piers's alleged actions in beating and imprisoning Plaintiff." (Def.'s Mem. Supp. Mot. Dismiss 7.) Plaintiff's only argument in response appears in a footnote to the section of his brief dedicated to a separate § 1983 failure to train claim. (See Pl.'s Mem. Supp. Mot. Dismiss 11 n.7.) Plaintiff states that he is "aware" of case law stating that the Tort Claims Act bars liability for "willful misconduct," but respectfully urges the Court to "amend" that interpretation. (Id.) Specifically, Plaintiff argues that "Part (a)(2) of section 8542 should be meant [sic] that only negligent actions by agents involve the listed categories for applicability, and municipalities should be liable for all intentional torts by one of its agents that occurred as a result of the municipality's negligence." (Id.) Contrary to Plaintiff's argument, however, the Court may not "amend" Pennsylvania courts' interpretation of a Pennsylvania statute, which, as written, only waives immunity for specific categories of negligent acts. Because Plaintiff's negligence claim against Defendant City of Philadelphia does not fall within one of the eight enumerated exceptions of the Tort Claims Act, the claim fails as a matter of law.[11]   Accordingly, Defendant City of Philadelphia's Motion to Dismiss Count Two is granted with prejudice.

## C.  **Count Three: Assault, Battery, and False Imprisonment**

In Count Three, Plaintiff asserts that the actions of Defendant Piers, as described above, constituted the torts of assault and battery, false imprisonment, and intentional and negligent infliction of emotional distress. (Am. Compl. ¶¶ 108–09, 116.) Defendant City of Philadelphia states that "[n]o one named 'Piers' works for the Philadelphia Police Department, and the City has not accepted service for this purported individual." (Def.'s Mem. Supp. Mot. Dismiss 1 n.1.)

---

[11] Plaintiff's claims of intentional and negligent infliction of emotional distress are also dismissed for the same reasons described above in connection with the rest of the claims in Count Two.

Whoever "Detective Piers" is, he has not moved this Court to dismiss the individual claims against him, nor has Defendant City of Philadelphia.  Accordingly, the Court will not address Plaintiff's claims in Count Three.

**D.  Leave to Amend**

The United States Court of Appeals for the Third Circuit has made clear that if a complaint is subject to Rule 12(b)(6) dismissal, a district court must ordinarily permit a curative amendment unless such an amendment would be inequitable or futile.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Dismissal without leave to amend is justified only on grounds of bad faith, undue delay, prejudice, and futility.  Id. at 236.  This opportunity to amend must be offered, even if the plaintiff does not specifically make such a request.  Id. at 235.

Although Plaintiff does not expressly request leave to file a second amended complaint, the Court finds that such leave is warranted in this case with respect to the claims in Count One.  Defendant has not set forth any contentions of bad faith, undue delay, or prejudice, nor can the Court find that any of these grounds for denying leave exist.  Defendant does argue futility, asserting that "Plaintiff's repeated pleading failures demonstrate the futility of allowing him to further amend his complaint, and the Court should thus dismiss the claims with prejudice." (Def.'s Mem. Supp. Mot. Dismiss 8 (citing Maxberry v. Sallie Mae Educ. Loans, 532 F. App'x 73, 75 (3d Cir. 2013)).)  While it would be futile for Plaintiff to attempt to amend the complaint with respect to Count Two, the Court finds that it is not necessarily futile for Plaintiff to attempt to re-structure the claims in Count One into legally cognizable municipal liability claims that are supported by sufficient factual allegations.  Accordingly, the Court will grant Plaintiff twenty days in which to file a second amended complaint properly setting forth a factual basis for the

28

municipal liability claims against Defendant.  Plaintiff's failure or inability to do so will, upon

proper motion by Defendant, result in dismissal of any deficient claims with prejudice.

   **E.  <u>Plaintiff's Request for Oral Argument</u>**

      Plaintiff requested, via a letter to the Court dated July 30, 2015, that the Court hear oral

argument regarding Defendant City of Philadelphia's Motion to Dismiss.  Plaintiff's request is

denied.

## IV.   CONCLUSION

      In light of the foregoing, Defendant's Motion to Dismiss is granted and the claims against

Defendant City of Philadelphia contained within Counts One and Two are dismissed.

Specifically, the claims in Count One are dismissed without prejudice and the claims in Count

Two are dismissed with prejudice.  The Court makes no ruling as to the claims against Defendant

Piers contained in Counts One and Three.  Plaintiff's request for oral argument is denied.

      An appropriate Order follows.